**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

TYRONE ANTHONY BELL, #240434,

      Petitioner,                    Civil No. 2:11-CV-10004
                                        HONORABLE NANCY G. EDMUNDS
v.                                  UNITED STATES DISTRICT JUDGE

MARY BERGHUIS,

      Respondent.

_____/

**OPINION AND ORDER DENYING THE PETITION FOR WRIT OF HABEAS CORPUS AND DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY OR LEAVE TO APPEAL IN FORMA PAUPERIS**

Tyrone Anthony Bell, ("petitioner"), presently confined at the Kinross Correctional Facility in Kincheloe, Michigan, filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, in which he challenges his conviction for second-degree murder, M.C.L.A. 750.317, felon in possession of a firearm, M.C.L.A. 750.224f, felony-firearm, second offense, M.C.L.A. 750.227b, and being a fourth felony habitual offender, M.C.L.A. 769.12. For the reasons that follow, the petition for writ of habeas corpus is DENIED.

**I. Background**

Petitioner was convicted of the above offenses following a bench trial in the Wayne County Circuit Court. Petitioner's convictions stem from the murder of his girlfriend, Lachon (aka Cheri) Smith, who was shot in the face with a shotgun. Her body was found in an alley in Detroit. The victim picked up her daughter after work from her mother's house at

1

approximately 2:20 a.m. on Saturday, August 2nd. (T 8/29/05, 36-40) Her mother was the last person to see the victim alive.  Between 3:00 and 4:00 a.m. John Davis and Trina Harper were near the alley where the victim was later found and heard a shotgun fired. (T 8/29/05, 102-103, 167; T 8/30/05, 17-18)  Moments later, they saw a blue Explorer with gray trim on the bottom speed away from the alley. (T 8/29/05, 101-102, 110-112, 147-160, 182-190; T 8/30/05, 9-13, 16, 37-42, 48-49, 56, 63-67, 71-73)  Their descriptions of the vehicle matched the vehicle driven by petitioner.  (T 8/30/05, 141-146, 153-154; T 8/31/05, 38; T 9/1/05, 102-103)  Lachon's cousin and housemate, Keith Dumas, found the victim's 5 year old daughter alone in the house when he awakened Saturday morning. The victim had never before left her daughter unattended. (T 8/31/05, 49-51)  Lachon's purse, keys, and cell phone were also missing, but her car was parked in its usual spot outside.  The doors to the house were locked from the outside, and only Dumas and the victim had keys to the residence. (T 8/29/05, 59-60; T 8/31/05, 50-52, 60-63, 76-77, 86-88)  When the victim was found in the alley later Saturday morning, she was wearing the same clothing she wore when she had picked up her daughter from her mother's house. (T 8/29/05, 62, 85-87, 95; T 8/30/05, 88-90; T 9/1/05, 158)

Petitioner had been paroled from prison, having been convicted of serious assaultive and firearms offenses.  From Betty Smith, Dumas, Minter, and Lancaster, the police knew that petitioner and the victim had dated in high school and began dating again in early June, 2003, after petitioner was released from prison. (T 8/30/05, 152-153, 218; T 8/31/05, 31-32, 33-36, 63-64, 77-79)  Petitioner came to the victim's house almost daily, and when the victim's work shift changed to nights in mid-July, petitioner would come by the house when the victim returned from work and would be there when Dumas awakened to go to

work at 3:00 or 4:00 a.m. (T 8/30/05, 156-157, 167-174, 202-203; T 8/31/05, 36, 39-41, 82-83)

Petitioner lied to Betty Smith about when he had last seen the victim. (T 8/29/05, 54-59, 77, 80, 95-96; T 8/31/05, 46-48, 66-77)  Petitioner failed to respond to Dumas' calls, did not assist in searching for the victim, and exhibited no concern for the fact that the victim was missing in the days between the murder and Monday, when the victim's body was identified. (T 8/29/05, 62; T 8/31/05)  Dumas went to petitioner's workplace several times on Tuesday, Wednesday, and Thursday after the victim's body was found, but petitioner's vehicle was not there. (T 8/31/05, 69-72)

Charles Minter testified that he frequently saw petitioner at the victim's home.  When Minter saw a shotgun and a handgun in petitioner's vehicle approximately three weeks prior to the murder, petitioner informed him, "I need these guns for when people roll up on me.."  (T 8/30/05, 153-166)  Minter testified that the victim had been unhappy with petitioner because he had stood her up and she caught him seeing another woman.  Minter testified that the victim was contemplating ending her relationship with petitioner.  Minter also recounted an incident when she and a male friend encountered petitioner and this friend and petitioner almost got into a fist fight.  (T 8/30/05, 160-162, 179-181, 196-197; T 8/31/05, 19-24, 84-85, 88)

Records of calls for the cell phones of the victim and petitioner were admitted and examined by the trial court.  Petitioner spoke with the victim in the hours before she was murdered, and although he claimed otherwise in a note, petitioner did not call the victim's cell phone or her house after the early morning hours of Saturday, even though her body was not identified until Monday. (T 8/30/05, 4-7)

3

Police officers contacted petitioner's parole officer and advised her that they would be arresting petitioner when he appeared for his appointment on August 7, 2003. (T 9/1/05, 97-100)  Following petitioner's arrest, his vehicle was seized and gunshot residue was recovered from it. (T 9/28/05, 49-58, 61-62, 84-88, 95-99).

Petitioner's conviction was affirmed on appeal. *People v. Bell*, No. 266277, 2007 WL 1429682, *1 (Mich. Ct. App. May 15, 2007); *lv. den.* 480 Mich. 951; 741 N.W. 2d 339 (2007).

Petitioner seeks a writ of habeas corpus on the following grounds:

I. The trial court denied [Petitioner] his constitutional right to be free from unreasonable search and seizure when it declined to suppress evidence seized with a defective search warrant under circumstances where the good faith exception to the warrant requirement was inapplicable.

II. [Petitioner] was denied his constitutional right to due process and a fair trial when the finding of guilt was supported by either inaccurate or inadmissible evidence. Counsel was ineffective for failing to object to the prosecution's misrepresentation of evidence and/or facts not in evidence.

III. The prosecutor committed misconduct by allowing Charles Minter to give perjured testimony which she knew to be false, and without correction. The prosecution's misrepresentation of evidence and facts not in evidence denied [Petitioner] the right to a fair trial and incited the passion of the judge and prejudiced the court's judgment.

IV. [Petitioner] was denied the right to present his defense which coerced him into [waiving] his constitutional right to a jury trial and [counsel] was absen[t] at a crucial stage of his trial.

V. [Petitioner] was wrongfully sentenced to 75-to-125 years. This is longer than [Petitioner's] life expectancy.

VI. [Petitioner] was absent counsel at a crucial stage, when counsel failed to file crucial motions.

VII. When [Petitioner] was arrested without probable cause, the fruits of that arrest were unconstitutionally seized and should have been suppress[ed] consistent with the protections of the Fourth Amendment of the United States

4

Constitution.

VIII. The trial court abused its discretion when it denied [Petitioner's] pretrial motion to suppress evidence obtained as the result of the execution of a search warrant that was deficient because the application for that warrant was not legally sufficient of its face.

IX. [Petitioner's] arrest was illegal and any evidence seized thereafter should be deemed fruits of the poisonous tree and should have been excluded from the evidence at his trial.

X. [Petitioner's] constitutional right to due process of law was violated when he was held more than 80 hours before being taken by a magistrate and formally charged.

XI. [Petitioner's] Sixth Amendment right to confront his accusers was violated when the officer who allegedly found evidence at his residence did not appear to testify.

XII. The trial court committed reversible error when it denied [Petitioner's] motion for directed verdict.

XIII. Ineffective assistance of counsel.

XIV. The trial court committed reversible error when it denied DNA testing of blood samples from remaining fingernail clippings taken from the body of the complainant.

XV. [Petitioner] was denied his constitutional right to due process when the preliminary court abused its discretion by denying his timely motion for dismissal pursuant to *People v. Weston*, 413 Mich. 371 (1982).

XVI. The court plainly erred when it denied [Petitioner] a fair and impartial preliminary examination when it used inadmissible evidence to make its judgment for bindover.

XVII. Joseph Shulman was ineffective in his duties at, before, and after preliminary examination.

XVIII. The cumulative effect of the violations at both the preliminary examination and before, during and after trial, denied [Petitioner] his constitutional right and as a result [Petitioner] was wrongfully bound over and convicted of second-degree murder.

5

## II.  Standard of Review

28 U.S.C. § 2254(d), as amended by The Antiterrorism and Effective Death Penalty

Act of 1996 (AEDPA), imposes the following standard of review for habeas cases:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> > (1)     resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2)     resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if the state

court arrives at a conclusion opposite to that reached by the Supreme Court on a question

of law or if the state court decides a case differently than the Supreme Court has on a set

of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000).  An

"unreasonable application" occurs when "a state court decision unreasonably applies the

law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409.  A federal habeas

court may not "issue the writ simply because that court concludes in its independent

judgment that the relevant state-court decision applied clearly established federal law

erroneously or incorrectly." *Id.* at 410-11.

The Supreme Court has explained that "[A] federal court's collateral review of a

state-court decision must be consistent with the respect due state courts in our federal

system." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).  The "AEDPA thus imposes a

'highly  deferential  standard  for  evaluating  state-court  rulings,' and  'demands  that

6

state-court decisions be given the benefit of the doubt.'" *Renico v. Lett*, 130 S.Ct. 1855, 1862 (2010)(quoting *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7 (1997); *Woodford v. Viscotti*, 537 U.S. 19, 24 (2002) (*per curiam*)).  "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011)(citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).  The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* (citing *Lockyer v. Andrade,* 538 U.S. 63, 75 (2003)). Furthermore, pursuant to § 2254(d), "a habeas court must determine what arguments or theories supported or...could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court. *Id.*

"[I]f this standard is difficult to meet, that is because it was meant to be." *Harrington,* 131 S. Ct. at 786.  Although 28 U.S.C. § 2254(d), as amended by the AEDPA, does not completely bar federal courts from relitigating claims that have previously been rejected in the state courts, it preserves the authority for a federal court to grant habeas relief only "in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with" the Supreme Court's precedents. *Id.*  Indeed, "Section 2254(d) reflects the view that habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Id.* (citing *Jackson v. Virginia,* 443 U.S. 307, 332, n. 5 (1979)(Stevens, J., concurring in judgment)).  Therefore, in order to obtain habeas relief in federal court, a state prisoner is required to show that the state court's rejection of his claim "was so

7

lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington,* 131 S. Ct. at 786-87.

### III.  Discussion

### A.  Claims # 1, # 6, # 7, # 8, # 9 and # 10.  The Fourth Amendment claims.

Petitioner's first and eighth claims allege that the trial court erred when it declined to suppress evidence seized with a defective search warrant, claims seven and nine allege that petitioner was arrested without probable cause and that the fruits of that arrest were unconstitutionally seized and should have been suppressed, and claim ten alleges that petitioner's due process rights were violated when he was held for more than 80 hours before being taken before a magistrate.  In his sixth claim, petitioner contends that trial counsel was ineffective for failing to challenge the legality of his arrest.  For judicial clarity, the Court will combine claims 1, 6, 7, 8, 9, and 10, being that they challenge the evidence seized in connection with petitioner's arrest and petitioner's detention before trial.

A federal habeas review of a petitioner's arrest or search by state police is barred where the state has provided a full and fair opportunity to litigate an illegal arrest or a search and seizure claim. *Stone v. Powell*, 428 U.S. 465, 494-95 (1976).  For such an opportunity to have existed, the state must have provided, in the abstract, a mechanism by which the petitioner could raise the claim, and presentation of the claim must not have been frustrated by a failure of that mechanism. *Riley v. Gray*, 674 F. 2d 522, 526 (6th Cir. 1982).  The relevant inquiry is whether a habeas petitioner had an opportunity to litigate his claims, not whether he in fact did so or even whether the Fourth Amendment claim was correctly decided. *See Wynne v. Renico*, 279 F. Supp. 2d 866, 892 (E.D. Mich. 2003);

8

*rev'd on other grds* 606 F.3d 867 (6th Cir. 2010).  Indeed, under *Stone*, the correctness of a state court's conclusions regarding a Fourth Amendment claim "is simply irrelevant." *See Brown v. Berghuis*, 638 F. Supp, 2d 795, 812 (E.D. Mich. 2009).  "The courts that have considered the matter 'have consistently held that an erroneous determination of a habeas petitioner's Fourth Amendment claim does not overcome the *Stone v. Powell* bar.'" *Id.* (quoting *Gilmore v. Marks*, 799 F.2d 51, 57 (3rd Cir. 1986)).  Thus, an argument by a habeas petitioner that is "directed solely at the correctness of the state court decision [on a Fourth Amendment claim] 'goes not to the fullness and fairness of his opportunity to litigate the claim[s], but to the correctness of the state court resolution, an issue which *Stone v. Powell* makes irrelevant.'" *Brown*, 638 F. Supp. 2d at 812-13 (quoting *Siripongs v. Calderon*, 35 F. 3d 1308, 1321 (9th Cir. 1994)).

Petitioner raised his Fourth Amendment claims involving the allegedly defective search warrant before the trial court and the Michigan appellate courts.  In regards to the search warrant, the trial court denied petitioner's motion to suppress evidence but granted petitioner a stay to pursue the issue in the Michigan Court of Appeals in an interlocutory appeal.  On November 19, 2004, the Michigan Court of Appeals denied petitioner's application for failure to persuade the court of the need for interlocutory review. *People v. Bell,* No. 258448 (Mich.Ct.App. November 19, 2004).

Following his conviction, petitioner raised all of his claims pertaining to the search and seizure on direct appeal in the Michigan Court of Appeals; the court considered the claims but denied relief.  The Michigan Court of Appeals found that the search warrant was supported by probable cause, and that petitioner failed to raise the issues involving the illegality of the arrest and the delay in arraignment in the trial court, thereby precluding

9

appellate review. *People v. Bell*, 2007 WL 1429682, * 1-3.

The opportunity to litigate, for purposes of *Stone v. Powell*, encompasses more than an evidentiary hearing in the trial court.  It also includes corrective action available through the appellate process on direct review of the conviction. *See Pulver v. Cunningham*, 419 F.Supp. 1221, 1224 (S.D.N.Y.1976); *See also Rashad v. Lafler*, 675 F. 3d 564, 570 (6th Cir. 2012)(petitioner had ample opportunities in state court to present his Fourth Amendment claims, thus precluding federal habeas relief based on the state court's failure to apply the exclusionary rule; trial court rejected defendant's Fourth Amendment claims on forfeiture grounds because his attorney did not show up at a hearing designed to consider them, and a state appellate court rejected his claims on the merits); *Lovely v. Jackson*, 337 F. Supp. 2d 969, 976 (E.D. Mich. 2004)(petitioner's Fourth Amendment claim was not cognizable on habeas review, even though the petitioner did not challenge the legality of his arrest prior to trial, where the petitioner first raised the issue in a post-trial motion and then on direct appeal and was denied relief).

On petitioner's direct appeal, appellate counsel challenged the arrest without a warrant and the subsequent search of petitioner's vehicle and house.  Petitioner claimed, "The police based their probable cause to arrest Defendant on a statement given to them by a Charles Minter on August 6, 2003.  Part of the statement was also used in the affidavit for the search warrant in this case."  Petitioner further claimed, "[T] police had mere suspicions at the time of Defendant's arrest and suspicion does not constitute probable cause."  The Michigan Court of Appeals reviewed the affidavit in support of the warrant used to search petitioner's house and concluded that it was sufficient.

We have reviewed the affidavit in support of the warrant at issue here and

10

conclude that it was sufficient. The affidavit indicated that the victim was found dead at 6:10 a.m. on August 2, 2003. An investigation revealed that the victim had worked the night shift, picked up her daughter from her mother's house, took her home, and put her to bed. The victim had not been seen alive again, which leads to an inference that someone she knew came to her house in the middle of the night and picked her up. Other information provided included that the victim was having a relationship with defendant at the time, but had had an argument with him about one week before she disappeared. And, contrary to routine, after the victim disappeared, defendant had not been to her house. Defendant was a felon on parole, having fairly recently gotten out of prison, yet he had been seen with a 12 gauge shotgun and handgun in his vehicle about two weeks before the victim's disappearance. These facts gave rise to a substantial basis for the magistrate's conclusion that there was a fair probability that evidence of a crime would be found at defendant's home, particularly because guns and ammunition are easily transportable and are normally kept in close proximity to the owner. See *People v. Hellstrom*, 264 Mich.App 187, 199-200; 690 NW2d 293 (2004).

*People v. Bell,* 2007 WL 1429682, * 1.

The officers relied on this statement prior to contacting petitioner's parole officer; they had probable cause to arrest petitioner.  Petitioner was prohibited from having weapons, due to his prior convictions.  The affidavit supported the belief that weapons were seen in the possession of petitioner prior to the victim's disappearance.  The Fourth Amendment permits a duly authorized law enforcement officer to make a warrantless felony arrest in a public place after developing probable cause for an arrest. *United States v. Watson*, 423 U.S. 411, 423 (1976).  The standard for determining probable cause to make an arrest is whether the facts and circumstances were sufficient to warrant a prudent officer in believing that the suspect had committed or was committing a crime. *Gerstein* v. *Pugh*, 420 U.S. 103, 111 (1975).  Although the issue of probable cause to arrest was not explored during pretrial hearings and found defaulted on petitioner's appeal of right, there are sufficient record references from which adequate police officer knowledge at the

time of arrest may be ascertained. A finding of probable cause is supported by a determination that the facts available to an officer at the time of arrest would justify finding that a fair-minded person of average intelligence believed that the suspected person had committed a felony. *People v. Kelly*, 231 Mich App 627, 631 (1998). At a minimum, the record establishes that when police officers arrested petitioner, the objective facts known to them would lead a fair-minded person to conclude that petitioner had committed the felony offense of Felon in Possession of a Firearm. The officers knew petitioner had been convicted of a felony and had contacted petitioner's parole officer and advised her that they would he arresting petitioner when he appeared for his appointment on August 7th. Charles Minter frequently saw petitioner at the victim's residence and had informed the police that he had seen a shotgun and a handgun in petitioner's vehicle approximately three weeks earlier. When asked why he had the guns, petitioner said that "I need these guns for when people roll up on me."

Because petitioner did not raise the issue of probable cause to arrest in the trial court, the record was not developed regarding the knowledge the police had at the time of arrest to support a warrantless arrest for homicide. The record, however, establishes that at the time of arrest the objective facts known to the police supported petitioner's arrest for Felon In Possession of a Firearm, and the arrest was therefore lawful. Further, although the record was not developed for this purpose, the trial testimony which was consistent with the search warrant unitized to support a finding of probable cause for the search and seizure also establishes that the police had probable cause to arrest petitioner for the homicide. Petitioner references this warrant in his brief on appeal stating that the police utilized information in this warrant prior to petitioner's arrest. The police had

12

probable cause to arrest petitioner for the firearms violation and well as the homicide.

On all accounts, petitioner had a full and fair opportunity to litigate his Fourth Amendment claims in the lower courts.  *Stone v. Powell's* "opportunity for full and fair consideration" means an available avenue for the prisoner to present his claim to the state courts, not an inquiry into the adequacy of the procedure actually used to resolve that particular claim. *Good v. Berghuis*, 729 F. 3d 636, 639 (6th Cir. 2013).  The opportunity to present the claim is all that is required.  The mere fact that petitioner's illegal arrest and delay in arraignment claims were procedurally defaulted by the Michigan Court of Appeals because of his failure to raise these particular Fourth Amendment claims in the trial court does not mean that petitioner did not have an adequate opportunity to raise these Fourth Amendment claims in the state courts. *See Moreno v. Dretke*, 362 F. Supp. 2d 773, 794-95 (W.D.Tex. 2005)(habeas petitioner was barred from obtaining federal habeas relief as to Fourth Amendment claim that evidence obtained in unconstitutional search or seizure was introduced at his trial, since State provided opportunity for full and fair litigation of his claim, regardless of whether claim was procedurally defaulted because petitioner's counsel failed to take steps necessary to properly preserve claim for state appellate review).

To the extent that petitioner alleges that trial counsel was ineffective for failing to raise his illegal arrest claims in the trial court, petitioner must demonstrate "that counsel's performance was deficient … [and] that the deficient performance prejudiced the defense." The petitioner must establish both prongs. *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  To prove that counsel's failure to litigate a Fourth Amendment claim competently is the principal claim of ineffectiveness, a defendant must prove that his Fourth

13

Amendment claim is meritorious and that there is a reasonable probability that the verdict would have been different absent the excludable evidence, in order to demonstrate actual prejudice. *Kimmelman v. Morrison*, 477 U.S. 365, 375 (1986).

The police had probable cause to search petitioner's vehicle and arrest petitioner for Felon in Possession of a Firearm as well as for the homicide. As a result, petitioner cannot show that counsel was somehow deficient in failing to raise these issues in the lower courts. Being that counsel did not err in failing to make the needless objections or by failing to file a motion to suppress, the results of petitioner's proceedings would not have been different.

All of the material facts for petitioner's Fourth Amendment claims were before the state appellate courts on direct review and the appellate process was not otherwise deficient; petitioner had a full and fair opportunity to litigate his first, sixth, seventh, eighth, ninth, and tenth claims. Because the Michigan courts provided an opportunity for a full and fair litigation of petitioner's Fourth Amendment claims, these claims are not cognizable on habeas review. *Stone*, 428 U.S. at 482.

**B. Claims # 2 and # 12. The Sufficiency of the Evidence claims.**

As part of his second claim, and in his twelfth claim, petitioner challenges the sufficiency of the evidence used to support his conviction.

It is beyond question that "the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In Re Winship*, 397 U.S. 358, 364 (1970). But the critical inquiry on review of the sufficiency of the evidence to support a criminal conviction is, "whether the record evidence could reasonably support a finding of guilt

14

beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 318 (1979). This inquiry, however, does not require a court to "ask itself whether it believes that the evidence at the trial established guilt beyond a reasonable doubt." Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Id.* at 318-19 (internal citation and footnote omitted)(emphasis in the original). The *Jackson* standard applies to bench trials, as well as to jury trials. *See e.g. U.S. v. Bronzino*, 598 F. 3d 276, 278 (6th Cir. 2010).

More importantly, a federal habeas court may not overturn a state court decision that rejects a sufficiency of the evidence claim simply because the federal court disagrees with the state court's resolution of that claim. Instead, a federal court may grant habeas relief only if the state court decision was an objectively unreasonable application of the *Jackson* standard. *See Cavazos v. Smith*, 132 S. Ct. 2, 4 (2011). "Because rational people can sometimes disagree, the inevitable consequence of this settled law is that judges will sometimes encounter convictions that they believe to be mistaken, but that they must nonetheless uphold." *Id.*

Finally, on habeas review, a federal court does not reweigh the evidence or redetermine the credibility of the witnesses whose demeanor was observed at trial. *Marshall v. Lonberger*, 459 U.S. 422, 434 (1983). It is the province of the factfinder to weigh the probative value of the evidence and resolve any conflicts in testimony. *Neal v. Morris*, 972 F. 2d 675, 679 (6th Cir. 1992); *See also Butzman v. U.S.,* 205 F. 2d 343, 349 (6th Cir. 1953)(in a bench trial, credibility of witnesses is a question for trial judge). A habeas court therefore must defer to the fact finder for its assessment of the credibility of

15

witnesses. *Matthews v. Abramajtys*, 319 F. 3d 780, 788 (6th Cir.2003). The Court does not apply the reasonable doubt standard when determining the sufficiency of evidence on habeas review. *Walker v. Russell*, 57 F. 3d 472, 475 (6th Cir. 1995).

As part of his second claim, petitioner appears to argue that the judge should not have considered the testimony of John Davis and Trina Harper to convict him because they were known drug users, making their testimony suspect.

Attacks on witness credibility are simply challenges to the quality of the prosecution's evidence, and not to the sufficiency of the evidence. *Martin v. Mitchell,* 280 F. 3d 594, 618 (6th Cir. 2002). An assessment of the credibility of witnesses is therefore generally beyond the scope of federal habeas review of sufficiency of evidence claims. *Gall v. Parker*, 231 F. 3d 265, 286 (6th Cir. 2000). The mere existence of sufficient evidence to convict therefore defeats a petitioner's claim. *Id.* To the extent that petitioner's insufficiency of evidence claim rests on an allegation of the witnesses' credibility, which is the province of the finder of fact, petitioner is not entitled to habeas relief on this claim. *See Tyler v. Mitchell,* 416 F. 3d 500, 505 (6th Cir. 2005).

In his twelfth claim, petitioner contends that the trial court erred in failing to direct a verdict of acquittal on the original first-degree murder charge, because there was insufficient evidence of premeditation and deliberation. With respect to the first-degree premeditated murder charge, petitioner was convicted following a bench trial of the lesser included offense of second-degree murder.

"[C]learly established Supreme Court law provides that a defendant has a right not to be *convicted* except upon proof of every element of a crime beyond a reasonable doubt; the Supreme Court has never held that the submission of a charge, upon which there is

16

insufficient evidence, violates a defendant's constitutional rights where the defendant is acquitted of that charge." *Long v. Stovall*, 450 F. Supp. 2d 746, 752 (E.D. Mich. 2006)(quoting *Skrzycki v. Lafler*, 347 F. Supp.2d 448, 453 (E.D. Mich. 2004)(emphasis original). A number of cases have held that the submission to a jury of a criminal charge constitutes harmless error where the habeas petitioner is acquitted of that charge. *Daniels v. Burke*, 83 F. 3d 760, 765, fn. 4 (6th Cir. 1996); *Long,* 450 F. Supp. 2d at 752; *Johnson v. Hofbauer,* 159 F. Supp. 2d 582, 596 (E.D. Mich. 2001); *But see Williams v. Jones*, 231 F. Supp. 2d 586, 593-94 (E.D.Mich. 2002)(finding this claim cognizable). In light of the fact that petitioner was acquitted of the first-degree premeditated murder charge and only found guilty of the lesser included offense of second-degree murder, any error in failing to direct a verdict on the first-degree premeditated murder charge would not entitle petitioner to habeas relief. *See King v. Trippett*, 27 Fed. Appx. 506, 510 (6th Cir. 2001)(Petitioner who alleged that the trial court improperly refused to enter a directed verdict on his armed robbery charge, even though the jury subsequently acquitted him on that charge, failed to state a claim sufficient for habeas corpus relief).

### C. Claims # 2, # 11, and # 14. Evidentiary Law Claims.

The Court consolidates petitioner's second, eleventh, and fourteenth claims together for judicial clarity because they involve state evidentiary law issues.

It is "not the province of a federal habeas court to reexamine state-court determinations on state-court questions." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). A federal court is limited in federal habeas review to deciding whether a state court conviction violates the Constitution, laws, or treaties of the United States. *Id.* Thus, errors in the application of state law, especially rulings regarding the admissibility of evidence,

17

are usually not questioned by a federal habeas court. *Seymour v. Walker,* 224 F. 3d 542, 552 (6th Cir. 2000); *See also Stephenson v. Renico,* 280 F. Supp. 2d 661, 666 (E.D. Mich. 2003).

As part of petitioner's second claim, he alleges that he was denied due process when police witnesses testified to letters found in his bedroom during the search of his house that were not admitted into evidence.

To the extent that petitioner is alleging a violation of state law, he would not be entitled to habeas relief.  To the extent that petitioner is alleging a violation of his Sixth Amendment right to confrontation by the officer's testimony, he would likewise not be entitled to habeas relief.

Out of court statements that are testimonial in nature are barred by the Sixth Amendment Confrontation Clause unless the witness is unavailable and the defendant has had a prior opportunity to cross-examine the witness, regardless of whether such statements are deemed reliable by the court. *See Crawford v. Washington,* 541 U.S. 36, 68-69 (2004).  However, the Confrontation Clause "does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted." *Id.,* at 59, n. 9; *See also Tennessee v. Street*, 471 U.S. 409, 414 (1985)(defendant's rights under the Confrontation Clause were not violated by introduction of an accomplice's confession for the nonhearsay purpose of rebutting defendant's testimony that his own confession was coercively derived from the accomplice's statement).  Indeed, "[I]n some circumstances, out of court statements offered for the limited purpose of explaining why a government investigation was undertaken have been determined not to be hearsay." *United States v. Gibbs*, 506 F. 3d 479, 486-87 (6th Cir. 2007)(*quoting United States v.*

18

*Martin*, 897 F. 2d 1368, 1371 (6th Cir.1990)).  Evidence that is provided merely by way of background or is offered only to explain how certain events came to pass or why law enforcement officers took the actions that they did is not offered for the truth of the matter asserted, and thus cannot trigger a Confrontation Clause violation. *See U.S. v. Warman,* 578 F. 3d 320, 346 (6th Cir. 2009)(*quoting United States v. Cromer*, 389 F.3d 662, 676 (6th Cir.2004)).

In the present case, the prosecution did not admit the contents of the letters themselves into evidence.  Instead, Investigator Fisher testified that the police found letters inside of the room that established petitioner's proof of residence.  A witness's testimony about his personal observations of an event is not an out-of-court statement and, thus, is not "hearsay." *U.S. v. Bursey,* 85 F. 3d 293, 296 (7th Cir. 1996).  Accordingly, the admission of Investigator Fisher's testimony did not violate petitioner's right of confrontation.

As part of his second claim, petitioner contends that trial counsel was ineffective for failing to object to Investigator Fisher's testimony.  To prevail on his ineffective assistance of counsel claims, petitioner must show that the state court's conclusion regarding these claims was contrary to, or an unreasonable application of, *Strickland v. Washington*, 466 U.S. 668 (1984). *See Cathron v. Jones,* 190 F. Supp. 2d 990, 996 (E.D. Mich. 2002).  *Strickland* established a two-prong test for claims of ineffective assistance of counsel: the petitioner must show (1) that counsel's performance was deficient, and (2) that the deficient performance prejudiced the defense. *Strickland,* 466 U.S. at 687.

Officer Fisher's testimony did not violate the Confrontation Clause, hence, counsel was not ineffective for failing to object to its admission on this basis. *See e.g. U.S. v.*

19

*Johnson,* 581 F. 3d 320, 328 (6th Cir. 2009).

In his eleventh claim, petitioner contends that his right to confrontation and to present a defense was violated when Officer Walter Bates was not produced at trial. Petitioner alleges, without evidentiary support, that Officer Bates planted evidence in this case and has since been convicted in federal court of fourteen counts of bank robbery.

A defendant in a criminal trial has the right to confront the witnesses against him. U.S. Const. Am. VI.  A primary interest secured by the Confrontation Clause is the right of cross-examination. *Douglas v. Alabama*, 380 U.S. 415, 418 (1965).  The Sixth Amendment Confrontation Clause guarantees the accused the right to cross examine adverse witnesses to uncover possible biases and expose the witness's motivation in testifying. *See Davis v. Alaska*, 415 U.S. 308, 316-317 (1974).

The Sixth Amendment guarantees a defendant the right to confront witnesses and to have compulsory process for witnesses favorable to him or to her.  However, the Sixth Amendment does not require the prosecution to call every witness who is competent to testify. *United States v. Moore,* 954 F. 2d 379, 381 (6th Cir. 1992).  The right to confrontation does not impose a duty upon the prosecution to call a particular witness. *United States v. Bryant,* 461 F. 2d 912, 916 (6th Cir. 1972); *See also Turnbough v. Wyrick,* 420 F. Supp. 588, 592 (E.D. Mo. 1976)(right to confrontation not denied by state's failure to call victim as a witness).  Stated differently, the Confrontation Clause "is not a guarantee that the prosecution will call all the witnesses it has against the defendant." *United States v. Morgan,* 757 F. 2d 1074, 1076 (10th Cir. 1985).  In *Cooper v. California,* 386 U.S. 58, 62, n. 2 (1967), the U.S. Supreme Court found a habeas petitioner's contention that he was deprived of his right to confrontation because the state did not

20

produce an informant to testify against him to be "absolutely devoid of merit." *Id.* Therefore, the Sixth Amendment right to confrontation "does not come into play where a potential witness neither testifies nor provides evidence at trial." *United States v. Porter,* 764 F. 2d 1, 9 (1st Cir. 1985)(internal citations omitted). In addition, federal law does not require the production of *res gestae* witnesses. *Johnson v. Hofbauer,* 159 F. Supp. 2d 582, 601 (E.D. Mich. 2001). "[U]nder federal law, there is no obligation on the part of the prosecutor to call any particular witness unless the government has reason to believe that the testimony would exculpate the petitioner." *Atkins v. Foltz*, 856 F. 2d 192, 1988 WL 87710, * 2 ( 6th Cir. August 24, 1988)(citing to *United States v. Bryant*, 461 F. 2d at 916).

The prosecutor's failure to call Officer Bates as a witness at trial did not violate petitioner's Sixth Amendment right to confrontation. As the above cases demonstrate, the Sixth Amendment confrontation clause does not require the prosecution to call any particular witness to testify at trial. Petitioner was able to confront and cross-examine all of the prosecution witnesses who testified at trial. Therefore, petitioner is unable to establish that his Sixth Amendment confrontation clause rights were violated.

Moreover, petitioner has failed to offer any evidence that Officer Bates' testimony would have exculpated him of this crime or could have served as useful impeachment evidence, so as to support his claim that Officer Bates's absence deprived petitioner of a right to present a defense. Conclusory allegations in a habeas petition, without evidentiary support, do not provide a basis for habeas relief. *Payne v. Smith,* 207 F. Supp. 2d 627, 650 (E.D. Mich. 2002); *See also Cooke v. Bach,* 838 F. 2d 1215 (Table); 1988 WL 9175, * 1 (6th Cir. February 8, 1988)(district court properly dismissed habeas petitioner's right to present a defense claim which was unsupported by the record). Because petitioner's right

21

to present a defense claim is conclusory and unsupported, he is not entitled to habeas relief on his eleventh claim.

In his fourteenth claim, petitioner alleges that the trial court denied his request for additional DNA testing from the remaining fingernail clippings taken from the victim.

The Michigan Court of Appeals rejected petitioner's claim, on the ground that one of the victim's fingernail clippings had already been tested and had DNA material from someone other than the victim or petitioner, therefore, any additional testing would not have made any difference on the outcome of the case. *People v. Bell*, 2007 WL 1429682, * 3.

Petitioner failed to offer any evidence that additional DNA testing would have exculpated him of the murder. The police had already performed testing on one of the victim's fingernails and had evidence that DNA from someone other than the victim or petitioner had been discovered. Petitioner has failed to show how additional DNA testing would have changed the outcome of his case. Because petitioner's DNA testing claim is based on conjecture, he is not entitled to habeas relief. See *Arthur v. Allen*, 459 F.3d 1310, 1311 (11th Cir.2006)(Mere speculation that DNA testing could demonstrate that the same person who raped the victim also physically assaulted her, was insufficient to demonstrate good cause for discovery).

**D. Claims # 15-17.  The preliminary examination claims.**

Petitioner next challenges various defects within the preliminary examination and the examining magistrate's decision to bind him over for trial.

Petitioner has failed to state a claim upon which habeas relief can be granted. A prior judicial hearing is not a prerequisite to prosecution by information. *Gerstein v. Pugh*,

22

420 U.S. 103, 119 (1975). There is no federal constitutional right to a preliminary examination. *See United States v. Mulligan*, 520 F. 2d 1327, 1329 (6th Cir. 1975). Petitioner's claim that there was insufficient evidence presented at his preliminary examination to bind him over for trial thus raises only a matter of state law and procedure that cannot form a basis for federal habeas relief. *See Dorchy v. Jones,* 320 F. Supp. 2d 564, 578-79 (E.D.Mich. 2004).

In addition, a guilty verdict renders harmless any error in the charging decision. *United States v. Mechanik,* 475 U.S. 66, 73 (1986). Any insufficiency of evidence at petitioner's preliminary examination would be harmless error in light of petitioner's subsequent conviction at trial. *See Redmond v. Worthinton,* 878 F. Supp. 2d 822, 844 (E.D. Mich. 2012).

To the extent that petitioner claims that his counsel was ineffective at the preliminary examination, he would likewise not be entitled to habeas relief. The Sixth Circuit has applied a harmless error analysis on habeas review of claims that a habeas petitioner was denied the right to counsel at a preliminary examination or hearing in a state criminal proceeding. *See Takacs v. Engle*, 768 F.2d 122, 124 (6th Cir.1985); *McKeldin v. Rose*, 631 F.2d 458, 460–61 (6th Cir.1980); *See also Dodge v. Johnson,* 471 F. 2d 1249, 1252 (6th Cir. 1973)(record failed to establish that lack of counsel at preliminary examination prejudiced petitioner's rights at trial or in any way tainted finding of guilt). In light of the fact that petitioner was convicted at trial, any alleged ineffective assistance of counsel at the preliminary examination was harmless error at most. Petitioner is not entitled to habeas relief on his fifteenth through seventeenth claims.

**E.  Claim # 3 and # 13.  The prosecutorial misconduct claims and ineffective**

**assistance of counsel.**

In his third claim, petitioner alleges that he was denied a fair trial because of prosecutorial misconduct and subsequently in his thirteenth claim, petitioner alleges that his trial counsel was ineffective for not objecting to the misconduct.

Petitioner first contends that the prosecutor permitted Charles Minter to give perjured testimony when he testified at trial that he met petitioner on July 1st , since Minter had previously stated in a police statement and at the preliminary examination that he met petitioner on July 4th.

The deliberate deception of a court and jurors by the presentation of known and false evidence is incompatible with the rudimentary demands of justice. *Giglio v. United States*, 405 U.S. 150, 153 (1972).  There is also a denial of due process when the prosecutor allows false evidence or testimony to go uncorrected. *Napue v. Illinois*, 360 U.S. 264, 269 (1959)(internal citations omitted).  To prevail on a claim that a conviction was obtained by evidence that the government knew or should have known to be false, a defendant must show that the statements were actually false, that the statements were material, and that the prosecutor knew they were false. *Coe v. Bell*, 161 F. 3d 320, 343 (6th Cir. 1998).  However, a habeas petitioner must show that a witness' statement was "indisputably false," rather than misleading, to establish a claim of prosecutorial misconduct or a denial of due process based on the knowing use of false or perjured testimony. *Byrd v. Collins*, 209 F. 3d 486, 517-18 (6th Cir. 2000).

Mere inconsistencies in a witness' testimony do not establish the knowing use of false testimony by the prosecutor. *Coe*, 161 F. 3d at 343.  Additionally, the fact that a witness contradicts himself or herself or changes his or her story also does not establish

24

perjury either. *Malcum v. Burt,* 276 F. Supp. 2d at 684 (citing *Monroe v. Smith*, 197 F. Supp. 2d 753, 762 (E.D. Mich. 2001)). A habeas petition should be granted if perjury by a government witness undermines the confidence in the outcome of the trial. *Id.*

Petitioner has failed to establish that Mr. Minter committed perjury. Petitioner merely points to inconsistencies between Minter's statements to the police, his preliminary examination testimony, and his testimony at trial. This is insufficient to establish a perjury claim. *Coe*, 161 F.3d at 343 ("mere inconsistencies" do not show indisputable falsity). More importantly, petitioner is not entitled to habeas relief on his perjury claim, because he has failed to show that the prosecutor knew that Minter testified falsely. *See Rosencrantz v. Lafler,* 568 F. 3d 577, 587 (6th Cir. 2009).

In his third claim, petitioner also claims that the prosecutor committed misconduct by leading the trial court to believe that petitioner had heard a voice message from Nassira Stanley which enraged him and caused him to kill the victim, when the telephone records showed that Ms. Stanley did not check her telephone records until after the murder.

"Claims of prosecutorial misconduct are reviewed deferentially on habeas review." *Millender v. Adams*, 376 F.3d 520, 528 (6th Cir.2004)(*citing Bowling v. Parker*, 344 F.3d 487, 512 (6th Cir. 2003)). A prosecutor's improper comments will be held to violate a criminal defendant's constitutional rights only if they "'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Darden v. Wainwright*, 477 U.S. 168, 181 (1986)(quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)). Prosecutorial misconduct will thus form the basis for habeas relief only if the conduct was so egregious as to render the entire trial fundamentally unfair based on the totality of the circumstances. *Donnelly v. DeChristoforo*, 416 U.S. at 643-45.

25

This Court notes that petitioner was convicted at a bench trial. Assuming that the prosecutor's comments were improper, petitioner is unable to show how these comments would have prejudiced him in a bench trial, where showing prejudice is more difficult. *Hargrave -Thomas v. Yukins,* 236 F. Supp. 2d 750, 778 (E.D. Mich. 2002); *rev'd in part on other grds* 374 F.3d 383 (6th Cir. 2004). The prosecutor's comments did not rise to the level of constitutionally impermissible misconduct warranting habeas relief, because the comments were isolated and would not likely have prejudiced a trial judge in a bench trial. *Matthews v. Abramajtys*, 92 F. Supp. 2d 615, 642 (E.D. Mich. 2000); *rev'd in part on other grds,* 319 F. 3d 780 (6th Cir. 2003).

The Court will reject petitioner's related ineffective assistance of counsel claim. To show prejudice under *Strickland* for failing to object to prosecutorial misconduct, a habeas petitioner must show that but for the alleged error of his trial counsel in failing to object to the prosecutor's improper questions and arguments, there is a reasonable probability that the proceeding would have been different. *Hinkle v. Randle,* 271 F. 3d 239, 245 (6th Cir. 2001). Because the prosecutor's comments did not deprive petitioner of a fundamentally fair trial, petitioner is unable to establish that he was prejudiced by counsel's failure to object to these remarks. *Slagle v. Bagley ,* 457 F. 3d 501, 528 (6th Cir. 2006).

**F. Claim # 4. The jury waiver trial claim.**

In his fourth claim, petitioner alleges that he was coerced into waiving his right to a jury trial and that counsel was ineffective for advising him to waive his jury trial right.

The record reveals that petitioner knowingly and intelligently waived his right to a jury trial. When the court asked petitioner if he had been threatened or coerced into waiving his right to a trial by jury, petitioner replied, "no." Petitioner also admitted that he

was waiving his trial by jury voluntarily and of his own free will. (T 8/29/05, pp. 3-6).

The burden of demonstrating that a waiver of a jury trial was invalid lies with the defendant who waived it. *See Sowell v. Bradshaw,* 372 F. 3d 821, 832 (6th Cir. 2004). "[A]lthough recommended, there is no federal constitutional requirement that a court conduct an on-the-record colloquy with the defendant prior to accepting the jury waiver." *Spytma v. Howes,* 313 F. 3d 363, 370 (6th Cir. 2002); *See also Fitzgerald v. Withrow,* 292 F. 3d 500, 504 (6th Cir. 2002)(neither an oral colloquy, nor any other particular form of waiver, is required for a valid waiver of jury trial as a matter of federal constitutional law). Moreover, "[t]echnical knowledge of the jury trial right is not required for waiver to be effective." *Spytma*, 313 F. 3d at 370 (internal quotation omitted).  Most importantly, "there is a knowing and intelligent waiver where the defendant 'understood that the choice confronting him was, on the one hand, to be judged by a group of people from the community, and on the other hand, to have his guilt or innocence determined by a judge.'" *Sowell*, 372 F. 3d at 836 (quoting *United States v. Sammons*, 918 F. 2d 592, 597 (6th Cir. 1990)(internal quotation omitted)).

In the present case, the trial court advised petitioner that he had a right to have a jury decide his case.  Petitioner indicated that he understood that he had a right to have a jury trial but stated that he wished to be tried by the judge sitting without a jury.  Under the circumstances, petitioner voluntarily waived his right to a jury trial after being advised by the trial court judge of his right to a jury trial.

In addition, the mere fact that petitioner waived his right to a jury trial because he believed that he had a better chance at acquittal with a non-jury trial would not render the waiver invalid.  A criminal defendant may have sound tactical reasons for relinquishing a

27

jury trial in favor of a bench trial. *See Adams v. United States ex. rel. McCann*, 317 U.S. 269, 278 (1942)("And since trial by jury confers burdens as well as benefits, an accused should be permitted to forego its privileges when his competent judgment counsels him that his interests are safer in the keeping of the judge than of the jury.")  The state court's decision that petitioner's jury trial waiver was not involuntary under these circumstances was not an unreasonable application of clearly established federal law. *See Sowell*, 372 F.3d at 835 (concluding that a petitioner's decision to waive his right to a jury trial in a capital case was not unknowing or involuntary where the waiver was made on the advice of defense counsel that a three-judge panel would not impose the death penalty).

The trial court judge advised petitioner of his right to a trial by jury, asked petitioner if he had consulted with both of his attorneys before signing the waiver form and then questioned petitioner as to whether anything had been promised in exchange for his waiver of his right to a trial by jury. (T 8/29/05, pp. 3-6)  Petitioner's claim that he was coerced into waiving his right to a trial by jury is without merit.

The Court will reject petitioner's related ineffective assistance of counsel claim.  A defense counsel's decision to waive a defendant's right to jury and proceed with a non-jury trial is a "classic example of strategic trial judgment" for which *Strickland* requires highly deferential judicial scrutiny, particularly on habeas review. *See Walendzinski v. Renico,* 354 F. Supp. 2d 752, 758 (E.D. Mich. 2005)(citation omitted).  A defense counsel's advice to a client to waive his jury "constitutes a conscious, tactical choice between two viable alternatives." *Id.*  In the present case, petitioner's counsel could have reasonably believed that it was better strategy for petitioner to be tried by the judge rather than a jury, and petitioner has failed to offer any evidence to the contrary. *Id. See also Willis v. Smith,* 351

28

F. 3d 741, 746 (6th Cir. 2003).

Moreover, petitioner has failed to show that he was prejudiced by counsel's recommendation to proceed with a bench trial, because he has presented no evidence that the trial judge was biased against him in any way. *Willis,* 351 F. 3d at 746.  Finally, trial counsel's advice to petitioner to waive a jury trial and to proceed with a non-jury trial did not prejudice petitioner, where it was unlikely that a jury would have acquitted petitioner after hearing the same persuasive evidence that the trial court judge heard in this case. *Walendzinski,* 354 F. Supp. 2d at 758.

In waiving petitioner's trial by jury, counsel was not ineffective. *See Dickerson v. Bagley,* 453 F. 3d 690, 700 (6th Cir. 2006).  Indeed, petitioner's counsel "had to make a choice between the two modes of trial, and it was impossible to say at the time which would be better for his client." *Id.*  There are no standards set out in the case law or the ABA Guidelines that establish professional norms as to how an attorney and his or her client should go about making the choice whether to proceed with a jury or bench trial.  In the absence of such standards, this Court cannot conclude that counsel was ineffective for advising petitioner to waive his right to a jury trial. *Id.*

**G.  Claim # 5.  The sentencing claim.**

Petitioner claims that his sentence of seventy five (75) to one hundred and twenty five (125) years is cruel and unusual punishment because the minimum sentence exceeds his life expectancy.

A sentence imposed within the statutory limits is not generally subject to habeas review. *Townsend v. Burke*, 334 U.S. 736, 741 (1948).  A sentence within the statutory maximum set by statute does not normally constitute cruel and unusual punishment either.

29

*Austin v. Jackson*, 213 F. 3d 298, 302 (6th Cir. 2000).   Second degree murder is punishable by a sentence of life or any term of years. M.C.L.A. 750.317.

The mere fact that the minimum sentence of seventy five years may exceed petitioner's life expectancy does not make petitioner's sentence cruel and unusual.  In rejecting a similar claim in a direct appeal from a federal criminal conviction, the Sixth Circuit has noted that "[T]he Supreme Court has never held that a sentence to a specific term of years, even if it might turn out to be more than the reasonable life expectancy of the defendant, constitutes cruel and unusual punishment." *United States v. Beverly,* 369 F. 3d 516, 537 (6th Cir. 2004)(citing *Harmelin v. Michigan,* 501 U.S. 957, 996 (1991)(holding that sentence of 71 ½ years, imposed on defendant who drove getaway car in four bank robberies and provided false identification documents, was not cruel and unusual punishment, even though defendant had no prior record and supplied critical information to FBI).  Because Michigan's second degree murder statute expressly provides for the imposition of a life sentence, the trial court's imposition of a minimum sentence which exceeds petitioner's likely life expectancy would not violate the Eighth Amendment. Petitioner has failed to state a claim upon which habeas relief can be granted.

### H.  Claim # 18.  Cumulative errors claim.

Petitioner finally contends that he is entitled to habeas relief because of cumulative error.  The cumulative weight of alleged constitutional trial errors in a state prosecution does not warrant federal habeas relief, because there is no clearly established federal law permitting or requiring the cumulation of distinct constitutional claims to grant habeas relief. *Moore v. Parker,* 425 F. 3d 250, 256 (6th Cir. 2005).  Therefore, petitioner is therefore not entitled to habeas relief on the grounds of cumulative error. *Id.*

30

## IV.  Conclusion

The Court will deny the petition for writ of habeas corpus.  The Court will also deny a certificate of appealability to petitioner.  In order to obtain a certificate of appealability, a prisoner must make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2).  To demonstrate this denial, the applicant is required to show that reasonable jurists could debate whether, or agree that, the petition should have been resolved in a different manner, or that the issues presented were adequate to deserve encouragement to proceed further. *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000). When a district court rejects a habeas petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims to be debatable or wrong. *Id.* at 484.  "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."  Rules Governing § 2254 Cases, Rule 11(a), 28 U.S.C. foll. § 2254.

For the reasons stated in this opinion, the Court will deny petitioner a certificate of appealability because he has failed to make a substantial showing of the denial of a federal constitutional right with respect to any of the claims. *Dell v. Straub,* 194 F. Supp. 2d 629, 659 (E.D. Mich. 2002).  The Court will also deny petitioner leave to appeal *in forma pauperis,* because the appeal would be frivolous. *Id.*

## V. <u>ORDER</u>

Based upon the foregoing, IT IS ORDERED that the petition for a writ of habeas corpus is **DENIED WITH PREJUDICE.**

IT IS FURTHER ORDERED That a certificate of appealability is **DENIED.**

31

IT IS FURTHER ORDERED that Petitioner will be **DENIED** leave to appeal *in forma pauperis.*

s/Nancy G. Edmunds
Nancy G. Edmunds
United States District Judge

Dated:  January 15, 2014

I hereby certify that a copy of the foregoing document was served upon counsel of record on January 15, 2014, by electronic and/or ordinary mail.

s/Johnetta M. Curry-Williams
Case Manager
Acting in the Absence of Carol Hemeyer